**[Cite as *State v. Leet*, 2020-Ohio-4592.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28670 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1568 |
| | : | |
| RICHARD B. LEET | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 25th day of September, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JAMIE J. RIZZO, Atty. Reg. No. 0099218, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Defendant-appellant Richard B. Leet appeals from his conviction for kidnapping and grand theft. For the reasons set forth below, we affirm.

## I.      Facts and Procedural History

{¶ 2} In May 2019, Jasmine Heath was at a gas station in Dayton. While Heath was at the window paying for her gas, Leet entered her vehicle and drove away. A six-week old infant whom Heath was babysitting was in the car. Eventually, Leet abandoned the vehicle with the child in it. When police located the vehicle, they found the infant unharmed. However, there was significant damage to the vehicle. Leet was subsequently arrested.

{¶ 3} Leet was indicted on one count of grand theft (motor vehicle), two counts of kidnapping, one count of abduction, and one count of interference with custody. Following plea negotiations, Leet agreed to plead guilty to one count of kidnapping (R.C. 2905.01(A)(2)), a felony of the second degree, and grand theft (R.C. 2913.02(A)), a felony of the fourth degree. In exchange, the State agreed to dismiss the remaining counts. A plea hearing was conducted in October 2019. Leet entered a plea of guilty and executed a plea waiver form. The trial court accepted the plea and found Leet guilty of the two charges.

{¶ 4} The sentencing hearing was conducted on December 3, 2019. The trial court sentenced Leet to a term of five to seven and one-half years in prison for kidnapping.[1] The court further sentenced Leet to a term of 18 months in prison for grand

---

[1] This sentence was imposed in accord with the Reagan Tokes Law (S.B. 201), which is discussed below.

theft.   The two sentences were ordered to be served concurrently.

{¶ 5} Leet appeals.

## II.        Constitutionality of Reagan Tokes Law

{¶ 6} The sole assignment of error asserted by Leet states as follows:

THE SENTENCE IMPOSED UPON MR. LEET IS UNCONSTITUTIONAL AS THE REAGAN TOKES LAW CLEARLY VIOLATES THE SEPARATION OF POWERS DOCTRINE OF THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, AND STRIPS INDIVIDUALS OF THEIR RIGHT TO DUE PROCESS.

{¶ 7} Leet contends the newly-enacted statutory sentencing scheme established by the Reagan Tokes Law is unconstitutional.   He thus asserts his sentence imposed thereunder must be vacated.

{¶ 8} The Reagan Tokes Law (S.B. 201) was enacted in 2018 and became effective on March 22, 2019.   R.C. 2901.011.   Under the law, qualifying first- and second-degree felonies committed on or after March 22, 2019 are now subject to the imposition of indefinite sentences.   The law specifies that these indefinite terms will consist of a minimum term selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A) and a maximum term determined by formulas set forth in R.C. 2929.144.

{¶ 9} Additionally, the law establishes a presumptive release date at the end of the minimum term.   R.C. 2967.271(B).   However, the Ohio Department of Rehabilitation and Correction (ODRC) may rebut that presumption, resulting in the offender remaining

in prison until the completion of the maximum term imposed by the sentencing judge. R.C. 2967.271(C). In order to rebut the presumption, the ODRC must conduct a hearing and determine whether any of the following factors are applicable:

(1) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated [and] [t]he offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2) and (3).

{¶ 10} As with any statute enacted by the General Assembly, the Reagan Tokes Law is entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7. Thus, "if at all possible, statutes must be

construed in conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). A party challenging the constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

{¶ 11} Leet first claims a violation of the separation of powers doctrine. Specifically, he argues the law is unconstitutional because it permits the ODRC, rather than a trial court, to make the factual determination whether a defendant's prison term will extend beyond the presumptive minimum term. His argument is based upon the holdings in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000) and *State v. Oneal*, Hamilton C.P. No. 1903562 (Nov. 20, 2019).

{¶ 12} In *Bray*, the Ohio Supreme Court addressed the constitutionality of R.C. 2967.11 (which has since been repealed). That statute stated, in pertinent part, that "[a]s part of a prisoner's sentence, the parole board may punish a violation committed by the prisoner by extending the prisoner's stated prison term for a period of fifteen, thirty, sixty, or ninety days in accordance with this section. If a prisoner's stated term is extended under this section, the time by which it is so extended shall be referred to as 'bad time.' " R.C. 2967.11(B). A "violation" was defined as "an act that is a criminal offense under the law of this state or the United States, whether or not a person is prosecuted for the commission of the offense." R.C. 2967.11(A). Other sections in R.C. 2967.11 articulated the procedures that were followed to determine whether a "violation" (a crime) had been committed. *Bray* at 135.

{¶ 13} The Supreme Court held, "[i]n short, R.C. 2967.11(C), (D), and (E) enable[d] the executive branch to prosecute an inmate for a crime, to determine whether a crime [had] been committed, and to impose a sentence for that crime." *Id.* The court held the statute improperly permitted the executive branch to act "as judge, prosecutor, and jury * * * [and thereby] intrude[d] well beyond the defined role of the executive branch as set forth in our Constitution." *Id.* Thus, the Court found the statute unconstitutional because it violated the separation of powers doctrine. *Id.* at 136.

{¶ 14} Relying on the reasoning in *Bray*, the trial court in *Oneal* concluded the Reagan Tokes legislation is unconstitutional because it likewise cedes judicial power to the executive branch. The trial court noted, "[t]he conditions that the [ODRC] may consider in determining whether an offender should not be released upon the end of [his] minimum prison term may include a 'violation of law' " which, like the bad time statute, "is synonymous with a criminal offense." *Oneal*, Hamilton C.P. No. 1903562, *5.

{¶ 15} Leet's reliance upon *Bray* and *Oneal* is misplaced because there is a significant distinction between the imposition of "bad time" as R.C. 2967.11 allowed and the Reagan Tokes Law. R.C. 2967.11 authorized the parole board to sentence a defendant to an additional prison term beyond that which had been imposed by the trial court. In *Bray*, the defendant had served the entirety of the definite sentence imposed by the trial court; the parole board then tacked an additional prison term onto the defendant's sentence. In contrast, under Reagan Tokes, the executive branch cannot keep a defendant in prison beyond the maximum sentence imposed by the trial court. In short, Reagan Tokes does not allow the ODRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court. We thus conclude that *Bray*

and *Oneal* do not compel the conclusion that the Reagan Tokes Law violates the separation of powers doctrine.

{¶ 16} Leet next raises several issues which he contends demonstrate the Reagan Tokes Law violates his right to due process. First, he complains the law permits him to face sentencing without the assistance of counsel. He further claims the law permits him to be sentenced for crimes he has not committed. Next, he argues the Reagan Tokes Law prevents the trial court from properly advising him of the possible consequences of his sentence. Finally, he asserts the law will result in a drastic increase in prison populations, resulting in inhumane conditions for prisoners.

{¶ 17} Turning to the first two arguments, we note they are based upon Leet's assertion that the ODRC can extend his sentence past the original sentence imposed by the trial court. The statute, as already discussed, provides that a defendant must be released no later than the expiration of the maximum sentence imposed by the trial court. Further, requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole, which in Ohio is an executive function that does not involve the judiciary. *See Woods v. Telb*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E. 2d 1103. Simply put, if Leet commits rule infractions or crimes while in prison, he may be required to serve the entire sentence already imposed by the trial court. This possibility does not implicate the right to counsel, and it does not support the conclusion that a defendant can be "sentenced" for crimes he has yet to commit.

{¶ 18} Leet next asserts the trial court could not fully advise him of the consequences of his sentence because the ODRC has not "established a proper procedure for how and when they will increase an individual's incarceration time." This

argument lacks merit.

{¶ 19} We very recently stated the following regarding whether the Reagan Tokes Law comports with due process:

"[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful manner. The Reagan Tokes Law satisfies these requirements. The Law states that, in order to rebut the presumption of the minimum term, the DRC must make a particular statutory determination 'at a hearing.' R.C. 2967.271(C) and (D). The law does not give the DRC unfettered discretion to require an offender to serve more than the minimum term. And it affords an offender notice and an opportunity to be heard before more than the minimum may be required."

State v. Ferguson, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 25, quoting Woods at 513, citing Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). We continue to adhere to the conclusion that Reagan Tokes does not facially violate a defendant's right to procedural due process.

{¶ 20} Further, the trial court's manner of conducting the plea hearing satisfied due process. Leet was advised he was subject to an indefinite term of imprisonment, but that the presumptive release date was the 5-year minimum term, with the possibility of early release for good behavior. Leet was also informed that if he violated one or more prison rules or if he committed a criminal offense while in prison, this conduct could be used to rebut the presumptive 5-year minimum term. Leet was finally informed that if the presumptive minimum term were rebutted, he would be required to serve the maximum 7 1/2 year prison term.

{¶ 21} In order to satisfy due process, a defendant's guilty plea must be knowing, intelligent, and voluntary. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). A trial court's compliance with Crim.R. 11 "ensures that a plea meets this constitutional mandate." *State v. Thompson*, 2d Dist. Montgomery No. 28308, 2020-Ohio-211, ¶ 5, citing *State v. Cole*, 2d Dist. Montgomery No. 26122, 2015-Ohio-3793, ¶ 12. Leet's due process argument implicates Crim.R. 11(C)(2)(a) which, among other things, requires the trial court at the plea hearing to determine the defendant's understanding of the maximum penalty involved. The trial court's careful advisement of the maximum penalty Leet faced under Reagan Tokes, and Leet's acknowledgement that he understood the maximum penalty discussion, more than satisfied due process.

{¶ 22} Leet finally asserts that, as a result of Reagan Tokes, prison populations will increase, resulting in overcrowded conditions. This is pure speculation not supported by the record. Given this, no further discussion is needed.

{¶ 23} The sole assignment of error is overruled.

### III. Conclusion

{¶ 24} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Jamie J. Rizzo
Adam J. Arnold
Hon. Gerald Parker