[Cite as *State v. Velliquette*, 2020-Ohio-4855.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                         Court of Appeals No. L-19-1232

      Appellee                             Trial Court No. CR0201902337

v.

Dyllan Velliquette                             **DECISION AND JUDGMENT**

      Appellant                            Decided:  October 9, 2020

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} This matter is before the court on appeal from the August 30, 2019 judgment, denying the motion to suppress of appellant Dyllan Velliquette, and the September 12, 2019 judgment, sentencing appellant to an aggregate prison term of 3 to

4 ½ years in prison, ordered consecutive to the balance of post release control remaining for a separate conviction. We affirm as to the trial court's ruling on appellant's motion to suppress, and dismiss regarding sentencing, finding the issue is not ripe for review.

## II. Facts and Procedural Background

{¶ 2} On June 17, 2019, appellant and two co-defendants, Gustavo Tapia and Darrien Davis, forced their way into a home, pointed a gun at one of the occupants and demanded cash and access to a safe. The three fled after another occupant called for help. Later in the evening, police stopped a vehicle driven by S.W.,[1] with Tapia and Davis as passengers. S.W. cooperated with the investigation and admitted that she waited outside in the car while appellant, Tapia, and Davis were inside the victims' home. She also told police where she had dropped appellant off afterwards, at appellant's mother's home. Police went to his mother's house and conducted a search with her consent, locating dark clothing and a firearm possibly connected to the incident.

{¶ 3} Police later apprehended appellant and took him to the Safety Building for an interview. Prior to the interview, Detective Kaczmarek asked appellant his name and date of birth. He also asked appellant where he was currently staying, and appellant indicated he stayed at both his mother's and father's homes and verified his mother's address. Detective Kaczmarek advised appellant of his *Miranda* rights, went over the waiver of rights form, and appellant signed the waiver.

---

[1] S.W. was identified in the record as a witness, subpoenaed for the September 9 trial date.

2.

{¶ 4} At the start of the interview, Detective Kaczmarek noted appellant looked ill, and asked appellant how he was feeling. Appellant told the detective that he had been roofing all day and was tired. Aside from appellant's weariness, the detective did not note any other conditions that suggested intoxication. Appellant spoke without slurring and gave thought-out answers to the detective's questions. Appellant admitted he was with Tapia, Davis, and S.W. the evening of the incident but denied involvement in any crime. After learning that police searched his mother's home with her consent, appellant asked for an attorney and ended the interview.

{¶ 5} On August 2, 2019, appellant was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1) and (C), a felony of the first degree, and one count of aggravated burglary in violation of R.C. 2911.11(A)(2) and (B), a felony of the first degree.[2] Each count included a firearm specification pursuant to R.C. 2941.145(A), (B), (C), and (F). Appellant was arraigned on August 7, with appointed counsel, and entered a plea of not guilty. Appellant also filed a motion to suppress his statements from his police interview, arguing he was too intoxicated to properly waive his *Miranda* rights and the detective elicited an incriminating statement prior to having him sign the waiver.

---

[2] The case is designated as a "re-indictment of CR 19-2106." Appellant was initially charged by indictment on June 26, 2019 in Lucas Common Pleas case No. CR 201902106 with a single count of aggravated burglary with a firearm specification. That case was dismissed by nolle prosequi at the request of the state on August 21, 2019, at the matter proceeded in the new case, now on appeal.

3.

Additionally, appellant argued that he was improperly coerced into giving statements, rendering his statements involuntary.

{¶ 6} On August 26, 2019, the trial court held a hearing on the motion to suppress, and determined appellant was not too intoxicated to make a knowing and intelligent waiver of his *Miranda* rights, noting appellant's ability to respond to questions and terminate the questioning by asking for a lawyer. The trial court further found that Detective Kaczmarek's questions about where appellant was staying were identifying questions, typical of preliminary questions preceding an interrogation, and appellant again identified his mother's house as his house after signing the *Miranda* waiver. Finally, the trial court determined that any misrepresentation by Detective Kaczmarek, regarding the number of people confessing to the crime, did not render appellant's statements involuntary.

{¶ 7} On September 9, 2019, the scheduled trial date, appellant entered a no contest plea to aggravated robbery and aggravated burglary, with the state dismissing the firearm specifications. The parties agreed to a jointly recommended sentence of 3 to 4.5 years.

{¶ 8} On September 11, 2019, the trial court held a sentencing hearing, and over appellant's objection to the imposition of indefinite sentencing under the Reagan Tokes law, imposed the jointly recommended sentence of a minimum term of 3 years in prison and a maximum term of 4.5 years in prison on each count, and ordered the sentences to be served concurrently to each other, but consecutively to any remaining time imposed as

4.

post release control in a prior conviction.[3]  The trial court further determined that each count was an offense of violence pursuant to R.C. 2901.01(A)(9)(a)-(d), and imposed post release control as to each count for the 5-year mandatory period, with proper notice to appellant.

{¶ 9} From this judgment, appellant filed a timely appeal.

### III.  Assignments of Error

{¶ 10} In his appeal, appellant raises the following issues as error for our review:

> I.  The Trial Court erred in denying Appellant's Motion to Suppress.
>
> II.  The Reagan Tokes Act is unconstitutional.

### IV.  Analysis

{¶ 11} In his first assignment of error, appellant argues his statements to police should have been suppressed, as he did not make a knowing, intelligent, and voluntary waiver of his rights prior to speaking with police.  The statements at issue include preliminary information supplied by appellant regarding where he lived and admissions during the interview regarding his activities with Tapia, Davis, and S.W.

---

[3] The trial court did not impose any post release control time in the prior case, Lucas County Common Pleas case No. CR 201502822, and therefore, indicating that time would be consecutive is merely a statement of applicable law.  Pursuant to R.C. 2929.141(A)(1), "[a] prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony."

5.

{¶ 12} Our review of the trial court's decision, denying appellant's motion to suppress "presents a mixed question of law and fact." *State v. Wesson,* 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶ 40, quoting *State v. Burnside,*100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent credible evidence, and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Wesson* at ¶ 40, quoting *Burnside* at ¶ 8.

{¶ 13} Prior to a custodial interrogation, the Fifth Amendment requires that a suspect "receive *Miranda* warnings to protect against self-incrimination." *Wesson* at ¶ 34, citing *Miranda v. Arizona,* 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). As a result, the prosecution may not use statements obtained through a custodial interrogation that lacked the requisite *Miranda* safeguards. *State v. Dailey,* 53 Ohio St.3d 88, 90, 559 N.E.2d 459 (1990), citing *Miranda* at 444.

{¶ 14} In this case, after some preliminary, biographical questions, appellant waived his rights, executed a waiver form, and spoke with the detective. After the detective informed appellant that police had searched his mother's home with her consent, appellant ended the interview by asking for a lawyer. Appellant now challenges the admissibility of his preliminary statements, made prior to being advised of his *Miranda* rights, as well as the validity of his written waiver and the use of statements made after he executed the waiver form.

6.

{¶ 15} As to the first category of statements, appellant argues that eliciting his address prior to advising him of his *Miranda* rights was improper, because where he stayed was used against him as incriminating information. In rejecting this argument, the trial court reviewed the recorded interview and determined the preliminary questions, including where appellant was staying, were "simply general, identifying questions which are asked of all individuals in custody prior to conducting an interview." We agree.

{¶ 16} Identifying questions, like the ones asked in this case, do not require *Miranda* warnings, as they are not asked to elicit an incriminating response. *See State v. Hale,* 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 32-33, citing *Pennsylvania v. Muniz,* 496 U.S. 582, 601, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990), quoting *United States v. Horton*, 873 F.2d 180, 181, fn. 2 (8th Cir.1989). Here, Detective Kaczmarek testified that he identified himself to appellant and then asked appellant identifying questions, including name and address, which was routine "in case we have to do a follow up investigation, or if we have to serve a subpoena through the court system."

{¶ 17} Appellant spelled out his name and confirmed his mother's address, and after noting this information, the detective proceeded to inform appellant of his *Miranda* rights. After waiving those rights and speaking with the detective, appellant again referred to his mother's home as a place where he stayed. Therefore, appellant's address as "incriminating" information, was conveyed both before and *after* appellant was given the *Miranda* warning, diminishing any argument relative to the preliminary, biographical

7.

questions. Accordingly, we find no basis to suppress appellant's preliminary statement regarding his address.

{¶ 18} As to statements made after appellant executed the waiver form, appellant argues his waiver was invalid because he was too intoxicated to make a knowing, intelligent, and voluntary waiver of his rights. He also argues that Detective Kaczmarek improperly coerced admissions by misstating the number of co-defendants who confessed and implicated appellant.

{¶ 19} "An accused's signed waiver form is strong proof that such waiver was valid." *State v. Nields,* 93 Ohio St.3d 6, 14, 75 2 N.E.2d 859 (2001), citing *State v. Clark*, 38 Ohio St.3d 252, 261, 527 N.E.2d 844 (1988); *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). However, if a defendant challenges the validity of the waiver, the state bears the burden of demonstrating, by a preponderance of the evidence, that the waiver was knowingly, intelligently, and voluntarily made. *Wesson* at ¶ 34, citing *Miranda* at 475; *Colorado v. Connelly*, 479 U.S. 157, 168-169, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *see also State v. Reynolds,* 2017-Ohio-1478, 89 N.E.3d 235 ¶ 64, (6th Dist.), citing *State v. Gumm,* 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995).

{¶ 20} "[T]he touchstone of an involuntary confession is police misconduct and the defendant's mental condition is merely one factor in the totality of the circumstances to be considered in determining constitutional voluntariness." *Reynolds* at ¶ 69. While appellant argues he was too intoxicated to voluntarily consent to questioning, our analysis

8.

focuses on the totality of the circumstances, including "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Dixon,* 101 Ohio St.3d 328, 2004-Ohio-1585, 805 N.E.2d 1042, ¶ 25; *State v. Edwards,* 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus.

{¶ 21} At hearing, Detective Kaczmarek testified that appellant did not exhibit confusion or any comprehension issues. Indeed, as he read through the waiver form, appellant asked for verification regarding his right to stop the interview at any time. Detective Kaczmarek described appellant's demeanor as "fairly tired, sweaty, and at the time maybe uninterested." Appellant exhibited no other signs suggesting intoxication. Based on appellant's appearance and responses to the questioning, the detective indicated the absence of slurred speech or nodding off during questioning, and instead characterized appellant's responses as "very thought out." After Detective Kaczmarek told appellant that police had searched his mother's home, appellant requested an attorney, exercising his right to end the questioning. The video of appellant during questioning supports Detective Kaczmarek's recollections. Accordingly, considering the totality of the circumstances, appellant's mental state was not impaired, and his *Miranda* waiver was clearly voluntary.

{¶ 22} Additionally, the record clearly supports the conclusion that appellant's will was not overcome by Detective Kaczmarek's misrepresentation regarding the

9.

number of individuals who had confessed. Prior to questioning appellant, Detective Kaczmarek indicated that S.W. had already identified all participants in the burglary and robbery, and his questions regarding appellant's location on the night of June 17 were asked to "figure out a timeline throughout the night as to location of all of the individuals involved in this incident[.]" Appellant's mother, furthermore, had already told police that appellant was staying at her home that night and police recovered a firearm at the house.

{¶ 23} Appellant argues, however, that Detective Kaczmarek coerced his confession by telling him that "they" confessed and implicated him, rather than indicating only "she," or S.W. confessed. At the suppression hearing, Detective Kaczmarek acknowledged saying "they" instead of "she," but also testified that appellant did not confess in response, stating appellant gave no reaction to his statement.

{¶ 24} "The tactic of lying to a suspect about the evidence is not in itself sufficient to render a confession involuntary." *State v. Ford,* 158 Ohio St.3d 139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 196, citing *Frazier v. Cupp,* 394 U.S. 731, 737-739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *State v. Bays,* 87 Ohio St.3d 15, 22-23, 716 N.E.2d 1126 (1999) (additional citation omitted.). Here, appellant identifies no involuntary statement that police elicited through assertions regarding the number of people who had already confessed, implicating appellant. Furthermore, there was no confession. Accordingly, we find no misrepresentations that overcame appellant's will and caused him to make involuntary statements.

10.

{¶ 25} Because the facts demonstrate a knowing, intelligent, and voluntary waiver, with no interrogation prior to the *Miranda* waiver and no inappropriate deception, we find appellant's first assignment of error not well-taken.

{¶ 26} In his second assignment of error, appellant argues that R.C. 2967.271, the Reagan Tokes law reinstituting indefinite sentences, is unconstitutional as a violation of the separation of powers doctrine and his due process rights. The Reagan Tokes law was enacted in 2018 and became effective on March 22, 2019. R.C. 2901.011. Appellant joined the state in recommending this sentence, while also preserving a general, unarticulated constitutional objection to the sentence at the time of sentencing.

{¶ 27} A jointly recommended sentence precludes review under R.C. 2953.08(D)(1), beyond what is "authorized by law." (Citation omitted) *State v. Sergent,* 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 11. "A sentence is authorized by law when 'it is within the statutory range of possible sentences and does not exceed the maximum term authorized for the offense.'" (Citation omitted) *State v. Nguyen*, 6th Dist. Lucas No. L-05-1369, 2007-Ohio-2034, ¶ 30. Here, appellant does not dispute the jointly recommended sentence, but rather, he challenges the constitutionality of the authority granted to prison officials to extend his sentence up to the maximum term imposed by the trial court.

{¶ 28} Under the Reagan Tokes law, a trial court imposing a prison term for a non-life, first or second degree felony, for offenses committed after the effective date of the law, must select a minimum prison term, which is then used in calculating the

11.

maximum prison term through the statutory formula. Based on conduct while incarcerated, the institution may rebut the presumption in favor of the minimum prison term and extend an offender's incarceration up to the maximum prison term. The statute provides, in part:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a

state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who

have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the

department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

R.C. 2967.271(B) - (D).

{¶ 29} As to each of appellant's arguments, regarding the possibility of hearings and an extended term, appellee, the state of Ohio, argues such a possibility may never be realized, and appellant's challenge is therefore not ripe for review. We previously reached this same conclusion in *State v. Maddox,* 6th Dist. Lucas No. L-19-1253, 2020-

15.

Ohio-4702, ¶ 13, citing decisions from the Fifth District Court of Appeals, dismissing such challenges as not ripe for review. *See State v. Manion,* 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230 and *State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227.

{¶ 30} We note that other jurisdictions have implicitly determined the issue to be ripe for review by addressing the constitutional challenge to the Regan Tokes provisions regarding future, possible extensions of a prison term beyond the presumed minimum term. The Second District Court of Appeals found the law constitutional in *State v. Barnes,* 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, *State v. Leet,* 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, and *State v. Ferguson,* 2d Dist. Montgomery No. 28644, 2020-Ohio-4153. The Twelfth District Court of Appeals also determined the law was constitutional in *State v. Guyton,* 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, *State v. Rodgers,* 12th Dist. No. Butler CA2019-11-194, 2020-Ohio-4102, and *State v. Morris,* 12th Dist. Butler No. CA2019-12-205, 2020-Ohio-4103.[4]

{¶ 31} Pursuant to Section 3(B)(4), Article IV of the Ohio Constitution, "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme

---

[4] The Fourth District Court of Appeals deemed the issue not preserved for appeal, based on the appellant's failure to raise the issue in the trial court and failure to assert any plain error argument in the direct appeal. *See State v. Conant,* 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319.

16.

court for review and final determination." The Ohio Supreme Court set forth three requirements that must be met in order for a case to be certified:

> First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law-not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends in in conflict with the judgment on the same question by other district courts of appeals.

*Whitelock v. Gilbane Bldg. Co.,* 66 Ohio St.3d 594, 596, 613 N.E.2d 1032 (1993).

{¶ 32} Based on our precedent, we find the issue of constitutionality regarding potential extensions to appellant's presumed minimum prison term to be not ripe for review. We do, however, recognize that our determination of an appealable issue regarding the constitutionality of Reagan Tokes provisions governing ODRC review pursuant to R.C. 2967.271(B)-(D) is in conflict with the decisions of the Second and Twelfth District Courts of Appeals. We therefore sua sponte certify the conflict to the Supreme Court of Ohio for review and final determination regarding whether the Reagan Tokes sentencing provisions are ripe for review in a direct appeal.

### V. Conclusion

{¶ 33} For the forgoing reasons, we affirm, in part, the judgments of the Lucas County Court of Common Pleas of August 30, 2019 and September 12, 2019, and

17.

dismiss, in part, regarding the constitutional challenge to R.C. 2967.271. The parties are directed to S.Ct. Prac.R. 8.01 for direction on how to proceed with respect to the certified conflict. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Affirmed, in part, and
dismissed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

JUDGE

Thomas J. Osowik, J. _____

_____

Gene A. Zmuda, P.J. _____
CONCUR.

JUDGE

_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.