[Cite as *State v. King*, 2021-Ohio-1636.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2020 CA 00064 |
| DENY LYMAN KING | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                             Pleas, Case No.  2019 CR 01460

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       May 11, 2021

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KYLE L. STONE                             PATRICK L. CUSMA
PROSECUTING ATTORNEY                      116 Cleveland Avenue NW
KATHLEEN O. TATARSKY                      700 Courtyard Square
ASSISTANT PROSECUTOR                      Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1} Appellant, Deny Lyman King, appeals the judgment entered by the Stark County Court of Common Pleas convicting him of violating R.C. 2903.01(A), Aggravated Murder (with Firearm Specification, R.C. 2941.145), R.C. 2903.11, Felonious Assault (with Firearm Specification, R.C. 2941.145), and R.C. 2923.13 Having Weapons While Under Disability. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

**STATEMENT OF THE FACTS AND CASE**

{¶2} On September 17, 2019, the Stark County Grand Jury indicted Appellant with one count of Aggravated Murder in violation of R.C. 2903.01(A) with specifications for Repeat Violent Offender (R.C. 2941.149) and Firearm (R.C. 2941.145), Felonious Assault in violation of R.C. 2903.11 with specifications for Repeat Violent Offender (R.C. 2941.149) and Firearm (R.C. 2941.145), and Having Weapons While Under Disability in violation of R.C. 2923.13.

{¶3} On September 20, 2019, Appellant entered a plea of not guilty to all counts of the indictment.

{¶4} On January 27, 2020, Appellant filed Notice of Defense on his intent to present a claim of Defense of Others.

{¶5} On February 10, 2020, the matter proceeded to a jury trial.

{¶6} At trial, the State called Deputy Jack Carruthers to testify. On direct examination, Deputy Carruthers testified that on June 27, 2019, he was dispatched to Brick City Lounge.

**{¶7}** Upon arriving at Brick City Lounge, Deputy Carruthers testified there were multiple people outside and he saw a black male, later identified as Jason Calhoun, laying in the doorway. Deputy Carruthers immediately began administering aid. While administering aid, Deputy Carruthers found a revolver on Calhoun.

**{¶8}** Next, the State called Deputy Derek Little to testify. Deputy Little testified upon arriving at the Brick City Lounge, he continued into the establishment toward where the second victim was located. Deputy Little testified that he found the second victim, later identified as Henderson Garner, laying on the floor with gunshot wounds to his leg and shoulder.

**{¶9}** The State then called Henderson Garner to the stand. Garner testified that on the date of June 27, 2019, he arrived at Brick City Lounge after a pool tournament. He was friends with Jason Calhoun. He testified that while he was playing pool that night strangers entered the establishment. A fight then broke out, but security broke up the fight and moved everyone out. Henderson soon joined Calhoun outside to see what was going on. As they were attempting to latch the door, Henderson saw a man with a gun on the corner. Henderson asked Calhoun if it looked like the man had a gun. Calhoun did not agree. The man with the gun then came up to Calhoun and Henderson and said he was looking for his friend. Henderson said they told the man that everyone was gone, and no one was inside. Henderson said the man asked again to look for his friend inside and then started shooting. He shot Henderson in the leg and chest, and shot Calhoun. Henderson then testified that they did nothing to provoke the man with the gun.

**{¶10}** Under cross-examination he testified that a fight broke out between the strangers and other patrons, and security broke up the fight and took everyone outside.

At that point, Henderson said he did not see any of the strangers still in the bar. He testified that the man with the gun asked about his friend politely, but never asked to go inside. He then testified he was standing next to Calhoun when the man started shooting.

{¶11} Next, the State called Edward Daniels to the stand. Daniels testified he was employed by Brick City Lounge as a DJ on June 27, 2019. He testified that neither he nor Calhoun participated in the fight that night, and that they had tried to break it up. Daniels was outside with Calhoun when a man came up to Calhoun attempting to get into the bar to find his friend. After being told his friend was not inside the bar and that the bar was closed, the man shot Calhoun. Daniels then called 911. Daniels said it was readily apparent Calhoun was injured, as there was blood on the ground and he was struggling to breathe.

{¶12} The State then called Milan Carr to the stand. Carr testified that he and another person went to Brick City Lounge on June 27, 2019, with Appellant and Eric Artis, who went by the name, "Cleve". He said they arrived around eight p.m. and ordered drinks. At some point a fight broke out and he was hit in the head with a bottle and left the bar on foot and ran through a field home.

{¶13} The State also called Detective Ross to testify. Detective Ross testified that he responded to Brick City Lounge just after the incident. He obtained video surveillance footage of the shooting. On the video, Detective Ross identified Appellant as the shooter. Detective Ross continued that his investigation showed Appellant had left Ohio for California. He testified the West Coast Marshall team arrested Appellant and transported him back to Ohio.

**{¶14}** During Detective Ross's testimony, the State then played a video showing the fight inside the bar. The video showed Appellant being hit by a pool stick, and Appellant hitting back. The video then showed Carr leaving Brick City Lounge first, followed by Appellant and Eric Artis. Detective Ross also testified that the video surveillance showed Appellant leaving with the murder weapon in his hand.

**{¶15}** Finally, the State called Dr. Frank Miller to testify. Dr. Miller testified he examined Calhoun. Dr. Miller testified Calhoun had suffered two gunshot wounds, one in his face and one in his back. The gunshot to his back was fatal.

**{¶16}** The State then rested its case.

**{¶17}** After the State rested its case, the defense called Appellant to testify. Appellant testified he has a prior conviction for attempted robbery in California. That night, Appellant, Carr, and Artis went to Brick City Lounge. While at the bar, Appellant said they made their way to the patio where a fight broke out. Appellant was hit with both a beer bottle and a pool stick. Appellant tried to leave the bar and testified someone was holding the door closed. Eventually, Appellant and Artis made it outside and headed to their car. They then heard gun shots. At this point Appellant and Artis realized Carr was not with them. Appellant tried to call Carr several times. He heard one patron threaten to "finish [someone] off." Appellant took the patron to mean they were going to kill Carr. Appellant then grabbed his gun and headed back to Brick City Lounge, believing Carr was still inside.

**{¶18}** As Appellant approached the establishment, he encountered Calhoun and Daniels. Appellant asked multiple times to go into the bar to get Carr and was told he would not be let back inside. Appellant said he saw Calhoun lower his hand, and that is

when Appellant pulled his gun and fired. After the shooting, Appellant testified he left the scene without going inside to check to see if Carr was there because he panicked.

**{¶19}** During cross-examination, Appellant testified that the robbery conviction in California had a firearm enhancement. Appellant confirmed he is not allowed to possess a firearm, but does anyway.

**{¶20}** After Appellant testified, the defense rested its case.

**{¶21}** On February 12, 2020, the jury returned a verdict of guilty on all counts of the indictment.

**{¶22}** On February 18, 2020, the trial court sentenced Appellant to life in prison without the possibility of parole for the Aggravated Murder charge, a concurrent six to nine year prison term for the Felonious Assault charge, a concurrent thirty-six month prison term for the Having Weapons Under Disability charge, a mandatory three year prison term on each of the firearm specifications, and the trial court did not sentence Appellant for his conviction on the repeat violent offender specification.

## ASSIGNMENT OF ERROR

**{¶23}** On March 25, 2020, Appellant filed a notice of appeal. He herein raises the following three Assignments of Error:

**{¶24}** "I. THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶25}** "II. THE VERDICT IS INSUFFICIENT AS A MATTER OF LAW.

**{¶26}** "III. THE TRIAL COURT'S SENTENCING WAS IN ERROR, DEPRIVING APPELLANT OF HIS CONSTITUTIONAL RIGHTS."

**I., II., III.**

{¶27} In Appellant's First, Second, and Third Assignments of Error, Appellant argues the jury's guilty verdict is against the manifest weight of the evidence and not supported by sufficient evidence, and at most was guilty of murder and not aggravated murder. We disagree.

{¶28} Sufficiency of the evidence and manifest weight of the evidence are separate and distinct legal standards. *State v. Thompkins*, 78 Ohio St.3d 380. Essentially, sufficiency is a test of adequacy. *Id.* A sufficiency of the evidence standard requires the appellate court  to examine the evidence admitted at trial, in the light most favorable to the prosecution, to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259.

{¶29} In contrast to the sufficiency of the evidence analysis, when reviewing a weight of the evidence argument, the appellate court reviews the entire record weighing the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts of evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶30} Under a weight of the evidence argument, the appellate court will consider the same evidence as when analyzing Appellant's sufficiency of the evidence argument. Appellant argues the jury clearly lost its way as their conviction of Appellant based on the total weight of the evidence was a manifest miscarriage of justice.

**{¶31}** The jury convicted Appellant on: Count One of the indictment, Aggravated Murder in violation of R.C. 2903.01(A) with Repeat Violent Offender specification in violation of R.C. 2941.149 and a firearm specification in violation of R.C. 2941.145; Count Two of the indictment, Felonious Assault in violation of R.C. 2903.11(A)(1) with Repeat Violent Offender specification in violation of R.C. 2941.149 and a firearm specification in violation of R.C. 2941.145; and Count Three of the indictment, Having Weapons Under Disability in violation of R.C. 2923.13(A)(2).

**{¶32}** R.C. 2903.01(A) states, "[n]o person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy."

**{¶33}** R.C. 2903.11(A), in pertinent part, states:

(A) No person shall knowingly do either of the following:

(1) Cause serious physical harm to another or to another's unborn[.]

**{¶34}** R.C. 2923.13(A), in pertinent part, states:

(A)    Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

…

(2)    The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

**{¶35}** R.C. 2901.05(B)(1) shifts the burden of proof to the State to prove beyond a reasonable doubt that an accused did not act in defense of another.

**{¶36}** R.C. 2901.05(B)(1) states:

A person is allowed to act in self-defense, defense of another, or defense of the person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶37}** In the case *sub judice,* the State produced video evidence showing Appellant shooting Calhoun and Gardner. The State called witnesses showing a fight broke out at Brick City Lounge, Appellant left the establishment, retrieved a firearm from his car, returned to the front of the establishment and shot Calhoun after an exchange. Evidence showed Calhoun was shot twice, once in the back. Garner testified that Appellant asked to go back into Brick City Lounge to look for his colleague. Calhoun told him no one was inside, and that Appellant would not be allowed inside the bar.

**{¶38}** At the end of the State's case, Appellant testified that he was struck several times, including with a pool stick during the fight, that the patrons of the bar held the door closed to keep he and his colleagues inside. Once he and one of his colleagues made it outside, they realized the third member of their group was not with them. Appellant then testified he retrieved a firearm from his vehicle and walked up to Calhoun to ask to be let

back in the bar. Calhoun told him no. Appellant then saw Calhoun lower his arm, so Appellant fired his weapon at Calhoun.

{¶39} Appellant's chief argument on appeal is that the evidence established he lawfully engaged in defense of another. R.C. 2901.05 states:

(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence as described in division(B)(1) of this section, is upon the accused.

(B) (1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at trial of a person who is accused of an offense that involved that person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶40} The standard for defense of another is comparable to self-defense. *State v. Evans*, 5th Dist. Stark No. 2012-CA-00130, 2013-Ohio-1784, ¶21. Therefore, the State must disprove beyond a reasonable doubt at least one the following elements: (1) Appellant was not at fault in creating a violent situation; (2) Appellant had a bona fide belief that another was in imminent danger of death or great bodily harm and that the only

means of escape was the use of force; and, (3) that the defendant violated no duty to retreat or avoid danger. *Id* at ¶23.

**{¶41}** In reviewing the sufficiency of the evidence challenge involving defense of another, we must view the evidence in a light most favorable to the State, and determine whether a rational trier of fact could have found the State met its burden of proof. *State v. Williams*, 5th Dist. Stark No. 2019CA00188, 2021-Ohio-443, ¶19.

**{¶42}** Viewing the evidence in a light most favorable to the State, the jury could reasonably have concluded Appellant had other means of defending his colleague other than through the use of force. Further we find the jury could also have concluded Appellant created the violent situation leading to the shooting. Appellant testified after he left the establishment he attempted to contact his colleague, but his colleague did not answer his phone. Believing his friend may still be inside, Appellant then retrieved a fire arm from his vehicle, approached Calhoun outside of the bar, and was told his friend was not inside. After being denied admittance, Appellant shot his firearm at Calhoun and Garner instead of calling the police.

**{¶43}** Therefore, we find a rational trier of fact could have found the State disproved at least one of the elements of defense of another beyond a reasonable doubt. Our review of the entire record fails to persuade us that the jury lost its way and created a manifest miscarriage of justice. Appellant was not convicted against the manifest weight of the evidence.

**{¶44}** In Appellant's Third Assignment of Error, Appellant also raises the issue on the constitutionality of the Reagan Tokes Act.

**{¶45}** This Court has previously addressed whether a challenge to the constitutionality of the Reagan Tokes Law is ripe for appellate review where the defendant has yet to serve the minimum term and yet to be subjected to the application of the Reagan Tokes Law. This Court has repeatedly held the issue is not ripe for review. *See State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Downard*, 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631, *State v. Wolfe*, 5th Dist. Licking No. 2020-CA-0021, 2020-Ohio-5501; and *State v. Buckner*, 5th Dist. Muskingum CT2020-0023, 2020-0024, 2020-Ohio-7017.

**{¶46}** The Sixth District has reached the same conclusion in *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702, and *State v. Velliquette*, 6th Dist. Lucas No. L-19-1232, 2020-Ohio-4855. Likewise the Fourth District found the issue not ripe for review in *State v. Ramey*, 4th Dist. Washington Nos. CA 1 and 20 CA 2, 2020-Ohio-6733.

**{¶47}** For the reasons set forth in our prior opinions, we find Appellant's Reagan Tokes challenge not ripe for review.

{¶48} Appellant's First, Second, and Third Assignments of Error are overruled.

{¶49} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Delaney, J., concurs.

Gwin, P. J., concurs in part and dissents in part.

JWW/br 0504

*Gwin, P.J., concurs in part; dissents in part*

{¶50} I concur in the majority's disposition of Appellant's First and Second Assignments of Error.

{¶51} I respectfully dissent from the majority's opinion concerning ripeness and Appellant's Third Assignment of Error for the reasons set forth in my dissenting opinion in *State v. Wolfe,* 5th Dist., Licking No. 2020 CA 00021, 2020-Ohio-5501. *Accord, State v. Wilburn,* 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578.

{¶52} I further note that the Ohio Supreme Court has accepted a certified conflict on the issue of whether the constitutionally of the Reagan Tokes Act is ripe for review on direct appeal or only after the defendant has served the minimum term and been subject to extension by application of the Act. *See, State v. Maddox*, 6th Dist. Lucas No. L-19-1253, 2020-Ohio-4702, *order to certify conflict allowed, State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150(Table) The conflict cases are *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592; *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153; *State v. Barne*s, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150; and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *See also, State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227, *appeal accepted on Appellant's Proposition of Law No. II*, *State v. Downard*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1507 (Table)(Sua sponte, cause held for the decision in 2020-1266, *State v. Maddox*).