[Cite as *State v. Cochran*, 2020-Ohio-5329.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JEREMY COCHRAN | : | Case No. 2019 CA 00122 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
                              Court of Common Pleas, Case No.
                              19-00454

JUDGMENT:                     Dismissed in part; Affirmed in part

DATE OF JUDGMENT:             November 18, 2020

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

WILLIAM C. HAYES                          JAMES A. ANZELMO
Licking County Prosecutor                 Anzelmo Law
                                          446 Howland Drive
By: PAULA M. SAWYERS                      Gahanna, Ohio 43230
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, Ohio 43055

*Baldwin, J.*

{¶1} Appellant, Jeremy Cochran, appeals the trial court's sentence for a violation of R.C. 2925.03, aggravated trafficking in drugs, a second degree felony, and a violation of R.C. 2925.11, aggravated possession of drugs, a second-degree felony. Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2} Cochran was indicted for a violation of R.C. 2925.03 and R.C. 2925.11, felonies of the second degree, and the case was scheduled for a jury trial on October 22, 2019. The facts surrounding the offenses that led to his arrest and indictment are not needed for the disposition of this appeal and are omitted. When Cochran appeared for his trial, he notified the court, prior to the commencement of any proceedings, that he decided to change his plea to guilty. At the opening of the hearing the court explained, "[w]e were informed that it would be a Change of Plea and Sentencing." The parties agreed that was correct and the court proceeded to conduct a colloquy with Cochran.

{¶3} We know that the trial court recognized that Cochran's sentence would be affected by the Reagan-Tokes Act (R.C. 2967.271) because the prosecutor described the jointly recommended sentence as three years and the judge corrected him by stating, "It can't be three years because it's a Reagan Tokes Act case." Later during the plea hearing the trial court explains to Cochran that the recommended sentence is three to four and one half years and that "I'll explain more of that to you in a little bit greater detail here in just a minute."

{¶4} The trial court proceeded with the colloquy and provided Cochran information required by R.C. 2929.19(B)(2)(c) as part of the explanation of Cochran's

rights and the consequence of entering a guilty plea. The court asked the prosecutor to describe the facts of the case and, after Cochran agreed with the facts, the trial court found Cochran guilty on both counts. The trial court asked defense counsel if there was "any reason why sentencing should not proceed at this point" and the following exchange occurred:

MR. DALSANTO: Your Honor, I do understand there's a joint recommendation in this case, but for the reasons that I stated in chambers -- uh -- I would ask that the Court consider ordering a Pre-Sentence Investigation in this case. Thank you.

THE COURT: Mr. -- um --

MR. CASE: We have no objection --

THE COURT: -- Case.

MR. CASE: -- Your Honor.

THE COURT: Okay. Alright. Then I'll order a PSI. I will revoke bond, defer sentencing, order a PSI, and Mr. DalSanto if you'll stop back in the Court uh -- Chambers, get a date --

MR. DALSANTO: Yes, Your Honor.

THE COURT: -- right now, we'll get you back on the calendar.

**{¶5}** Cochran returned to the trial court on November 15, 2019 and the trial court opened the hearing by stating, "The case is scheduled for a sentencing hearing." The court reviewed the prior proceedings, commented that Cochran had appeared before the court on October 22, 2019 and entered guilty pleas and that sentencing was deferred for a PSI. The trial court asked defense counsel if there was any reason that sentencing should not

proceed and, upon receiving counsel's response, he inquired as to the parties' position on sentencing, considered their responses, and engaged in a conversation with Cochran. The trial court rejected the joint recommendation and imposed a term of four to six years.

**{¶6}** Cochran filed a notice of appeal and submitted three assignments of error:

**{¶7}** "I. AS AMENDED BY THE REAGAN TOKES ACT, THE REVISED CODE'S SENTENCES FOR FIRST AND SECOND DEGREE QUALIFYING FELONIES VIOLATES THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO."

**{¶8}** "II. JEREMY COCHRAN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

**{¶9}** "III. THE TRIAL COURT SENTENCED COCHRAN TO AN INDEFINITE PRISON TERM IN CONTRAVENTION OF THE SENTENCING STATUTES, IN VIOLATION OF COCHRAN'S RIGHTS TO DUE PROCESS."

## ANALYSIS

**{¶10}** In his first Assignment of Error, Cochran challenges the presumptive release feature of R.C. 2967.271, arguing it violates his constitutional right to due process of law. In his second Assignment of Error, Cochran argues his trial counsel was ineffective by failing to raise the constitutionality of R.C. 2967.271 in the trial court. We will address these assignments of error together.

**{¶11}** Revised Code 2967.271 provides in pertinent part:

(B) When an offender is sentenced to a non-life felony indefinite prison term,

there shall be a presumption that the person shall be released from service

of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1)     Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a)     During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b)     The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a)

of this section, demonstrate that the offender continues to pose a threat to society.

(2)    Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3)    At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section.

Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the

offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration.

If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

{¶12} Cochran argues the portions of the statute which allow the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions. Cochran, however, has not yet been subject to the application of these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

{¶13} This Court recently analyzed an appeal of a sentence imposed pursuant to the Reagan Tokes Act. See *State v. Downard,* 5th Dist. Muskingum No. CT2019-0079, 2020-Ohio-4227 and *State v. Kibler,* 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631. The appellants in *Downard* and *Kibler* entered guilty pleas and were sentenced, with

the sentences in both cases affected by the Reagan Tokes Act. Both appellants appealed, arguing the Reagan Tokes Act violated their constitutional rights to due process and trial by jury.

{¶14} In both *Downard* and *Kibler* we considered the legal concept of "ripeness for review:"

The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

Ripeness "is peculiarly a question of timing." *Regional Rail Reorganization Act Cases* (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681, 691. As one writer has observed:

"The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the

plaintiff." Comment, Mootness and Ripeness: The Postman Always Rings

Twice (1965), 65 Colum. L.Rev. 867, 876. *4 Id. at 89, 694 N.E.2d at 460.

*Downard*, at ¶¶ 8-9.

**{¶15}** We found the appellants' appeals of the constitutionality of the Reagan Tokes Act were not ripe for review. "* * * [W]hile R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his **** minimum sentence and potentially continue his incarceration to a term not [exceeding the maximum time], Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review." *Downard*, at ¶ 11. We determined the appropriate action for the appellant was "to challenge the constitutionality of the presumptive release portions of R.C. 2967.271 is by filing a writ of habeas corpus if he is not released at the conclusion of his eight year minimum term of incarceration." *Downard,* at ¶ 12.

**{¶16}** We find that the issues presented in the current case are identical to those in *Downard* and *Kibler.* On November 15, 2019, Cochran was sentenced to a minimum prison term of four years and an indefinite prison term of six years. There is no dispute that Cochran has not yet been subject to R.C. 2967.271, which allows the DRC to rebut the presumption that he will be released after serving his four year minimum sentence and potentially continuing his incarceration to a term not exceeding six years. The constitutional issues argued by Cochran, pursuant to *Downard* and *Kibler* are not yet ripe for review. (See also *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702).

**{¶17}** The first two Assignments of Error are overruled.

III.

{¶18} In his third assignment of error, Cochran complains that the trial court failed to comply with R.C. 2929.19(B)(2)(c) because the court did not provide the requisite notices at his sentencing hearing and that the sentence is contrary to law. Cochran emphasizes that the notices were not provided "[a]t the sentencing hearing" focusing on the timing of the notices rather than the content. Appellee responds to the argument, contending that the notices were provided and that the sentencing hearing would have been held but for Cochran's request for a continuance.

{¶19} Cochran appeared before the court on October 22, 2019 to enter a change of plea after he and the appellee reached an agreement on a joint recommendation of three years with a maximum of four and one half years. The court engaged in a standard colloquy and referenced the notices required by R.C. 2929.19(B)(2)(c) and accepted Cochran's guilty plea, but deferred sentencing for the completion of a pre-sentence investigation at the request of Cochran.

{¶20} On November 15, 2019, Cochran was back before the court. The trial court noted that Cochran entered guilty pleas on October 22, 2019 and that sentencing was deferred to complete a pre-sentence investigation. Cochran moved for merger of the counts and appellee agreed, and the court merged the counts. The trial court engaged in a lengthy discussion with Cochran about his criminal history, rejected the joint recommendation, and imposed an indefinite sentence of four years minimum to a maximum of six years. The trial court notified Cochran of the mandatory period of post release control and concluded the hearing but did not reference the notices required by R.C. 2929.19(B)(2)(c) at the November 15, 2019 hearing.

{¶21} Appellee characterizes the October 22, 2019 hearing as a "plea and sentencing hearing" and the trial court does begin the hearing by noting that the matter was scheduled for trial but that he had been informed that "it would be a change of plea and sentencing," corroborating the appellee's description of the hearing. Appellee contends that because the notices were provided at the October "plea and sentencing" hearing, the statutory notices provided in October satisfy the requirement that the notices be provided at sentencing. We have reviewed the record and we agree with appellee's analysis.

{¶22} The hearing on November 15, 2019, was not the initial sentencing hearing, but a continuation of the October 22, 2019 plea and sentencing hearing. As such, the trial court was not obligated to repeat the R.C. 2929.19(B)(2)(c) notices. For an analogous result see *State v. Baumgardner*, 5th Dist. Morgan County App. No. 15AP0014, 2017-Ohio-50.

{¶23} The appellant's third assignment of error is overruled.

**{¶24}** We hold the first two assignments of error not ripe for consideration and dismiss that portion of the appeal. The third assignment of error is denied. The decision of the Licking County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. concur

Gwin, J. dissents.

*Gwin, J., dissents*

{¶25} I respectfully dissent from the majority's opinion.

I.

**Ripeness.**

{¶26} Ripeness reflects constitutional considerations that implicate "Article III limitations on judicial power," as well as "prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Social Services, Inc.*, 509 U.S. 43, 57, n. 18, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993). In evaluating a claim to determine whether it is ripe for judicial review, courts should consider both "the fitness of the issues for judicial decision" and "the hardship of withholding court consideration." *National Park Hospitality Assn. v. Department of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). The Supreme Court has stated that the "basic rationale" of the ripeness doctrine "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

{¶27} In determining the "likelihood" that an injury will come to pass, the Supreme Court has made clear that "[o]ne does not have to await consummation of threatened injury to obtain preventive relief." *Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). For example, in the Regional *Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974), the Court deemed ripe an action brought by eight major railroads challenging the conveyance of their property to Conrail. Although a reorganization plan had not yet been formulated and a special court had not yet ordered the conveyances, the Court reasoned that "where the inevitability of the operation of a

statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." Id. at 143, 95 S.Ct. 335. Although not requiring "inevitability," the Court has held that a claim is ripe when it is "highly probable" that the alleged harm or injury will occur.

{¶28} "Three factors guide the ripeness inquiry: '(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.' " *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012) (*quoting Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008)). *See also*, *Reno v. Catholic Social Services, Inc.,* 509 U.S.43, 71, 113 S.Ct. 2485, 125 L.Ed.2d 38(1993)(O'Conner, J. concurring)("These are just the kinds of factors identified in the two-part, prudential test for ripeness that *Abbott Laboratories* [*v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681(1967)] articulated. "The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S., at 149, 87 S.Ct. at 1515. *See Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581–582, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985) (*relying upon Abbott Laboratories* test); *Pacific Gas, supra*, 461 U.S., at 200–203, 103 S.Ct., at 1720–1721 (same); *National Crushed Stone, supra*, 449 U.S., at 72–73, n. 12, 101 S.Ct., at 301–302, n. 12 (same)."). As the court in *Riva v. Commonwealth of Massachusetts* noted,

Although it is a familiar bromide that courts should not labor to protect a party against harm that is merely remote or contingent, *see, e.g., Ernst & Young,* 45 F.3d at 536; *Massachusetts Ass'n of Afro–Am. Pol*ice, 973 F.2d at 20; *Lincoln House v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990), there is some play in the joints. For example, even when the direct application of a statute is open to a charge of remoteness by reason of a lengthy, built-in time delay before the statute takes effect, ripeness may be found as long as the statute's operation is inevitable (or nearly so). *See, e.g., Regional Rail Reorg. Act Cases,* 419 U.S. 102, 142–43, 95 S.Ct. 335, 357–58, 42 L.Ed.2d 320 (1974). And, even when the direct application of such a statute is subject to some degree of contingency, the statute may impose sufficiently serious collateral injuries that an inquiring court will deem the hardship component satisfied. See Erwin Chemerinsky, *Federal Jurisdiction* § 2.4.2, at 121–22 (2d ed. 1994). In general, collateral effects can rise to this level when a statute indirectly permits private action that causes present harm, or when a party must decide currently whether to expend substantial resources that would be largely or entirely wasted if the issue were later resolved in an unfavorable way. *See, e.g., Pacific Gas*, 461 U.S. at 201, 103 S.Ct. at 1720–21; *Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 81–82, 98 S.Ct. 2620, 2634–35, 57 L.Ed.2d 595 (1978)

61 F.3d 1003, 1010(1st Cir. 1995).

In *United Public Workers v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), the Supreme Court held that review of the Hatch Act,

which prohibits federal employees from engaging in certain political activities, was non-justiciable with respect to those plaintiff-employees who had not yet engaged in any of the prohibited activity. Subsequently, however, the Court relaxed *Mitchell's* strict approach to justiciability. If the injury is clearly impending, the Court has held that the plaintiffs need not await consummation of the injury to bring their suit. *Babbitt v. United Farm Workers National Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); Regional *Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974); Steffel *v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); Pennsylvania *v. West Virginia*, 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923).

*Signorelli v. Evans,* 637 F.2d 853, 856-857(2nd Cir. 1980).

{¶29} The Ohio Supreme Court has interpreted a "justiciable matter" to mean the existence of an actual controversy, a genuine dispute between adverse parties. *State ex rel. Barclays Bank PLC v. Hamilton Cty. Court of Common Pleas*, 74 Ohio St.3d 535, 542, 660 N.E.2d 458 (1996). In order for a justiciable question to exist, the "threat" to a party's position "must be actual and genuine and not merely possible or remote." *M6 Motors, Inc. v. Nissan of N. Olmsted, L.L.C.*, 2014-Ohio-2537, 14 N.E.3d 1054, ¶ 17, c*iting Mid–Am. Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, 863 N.E.2d 142, ¶ 9.

{¶30} In the present case, every individual throughout the State of Ohio who is convicted of a first or second degree felony must be sentenced under the

Regan Tokes Law. It is a virtual certainty that a number of those individuals, perhaps a significantly large number, will have the DRC extend his or her incarceration beyond the presumed release date.  This is not an abstract or hypothetical case; rather, it is a virtual certainty to occur.  Under Regan Tokes, the question is not *if* a defendant will be denied his or her presumptive release date; but rather *when* a defendant's sentence will be extended.

{¶31}  The record before this Court is sufficiently developed to allow us to produce a fair adjudication of the merits of the parties' respective claims. It is not unusual for courts to be asked to pass upon the constitutionality of statute. The constitutional arguments are capable of being addressed in the present appeal

{¶32}  I would call attention to the fact that other jurisdictions have implicitly determined the issue to be ripe for review by addressing the constitutional challenge to the Regan Tokes provisions regarding future, possible extensions of a prison term beyond the presumed minimum term. The Second District Court of Appeals found the law constitutional in *State v. Barnes*, 2nd Dist. Montgomery No. 28613, 2020-Ohio-4150, *State v. Leet*, 2nd Dist. Montgomery No. 28670, 2020-Ohio-4592, and *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153. The Third District Court of Appeals found the law constitutional in *State v. Hacker,* 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048. The Twelfth District Court of Appeals also determined the law was constitutional in *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, *State v. Rodgers*, 12th Dist. No. Butler CA2019-11-194, 2020-Ohio-4102, and *State v. Morris*, 12th Dist. Butler No. CA2019-12-205, 2020-Ohio-4103.  I would further note that the Sixth District has

certified the ripeness issue to the Ohio Supreme Court as being in conflict with the decisions from the Second and Twelfth Districts that have found the law constitutional. *State v. Velliquette,* 6th Dist. Logan No. L-19-1232, 2020-Ohio-4855.

{¶33} The hardship to the parties if judicial relief is denied at this stage in the proceedings is real and immense. At the present time, the indigent appellant, who wishes to raise a constitutional challenge to the law in his or her direct appeal as of right, has the assistance of appointed counsel. If, for example, the appellant must wait for three years for the DRC to extend his sentence, both the inmate and the courts will face a myriad of legal hurdles. First, how will the inmate inform the court of his or her desire to appeal the constitutionally of the law? Next, is the inmate entitled to appointed counsel to pursue such an appeal? If the inmate is not, then an incarcerated inmate with limited legal resources and acumen will have to cobble together a highly involved constitutional argument without the assistance of counsel and with extremely limited access to legal resources. It will also become evident that the DRC decision extending the inmate's sentence is not part of the trial court record. In order to establish that the inmate's sentence was in fact extended, will the trial court be required to order the DRC to file its decision with the clerk of courts for inclusion in the trial and appellate court records? Further, the inmate will necessarily have to await the trial court decision on the constitutionality of the law, the court of appeals decision and eventually the decision of the Ohio Supreme Court, a process that can take years. In the event that the inmate gains his or her release before then, the issue will no doubt be declared moot. Additionally, if the law is declared unconstitutional years from now,

courts will be inundated with writs of habeas corpus, motions and other request for release or resentencing from the hundreds of inmates who were sentenced under the law and not permitted to appeal the constitutionality of the law in the inmates direct appeal. Finally, the inmate will have been incarcerated perhaps years beyond his release date for the time it takes to decide the issue in the event the law is found to be unconstitutional.

{¶34} It is clear on these facts that Appellant has demonstrated sufficient hardship, and that the question of the constitutionality of the Regan Tokes Law is fit for our review at this time. I find that nothing is to be gained by postponing for possibly years the unavoidable constitutional challenge to the Regan Tokes provisions regarding future, possible extensions of a prison term beyond the presumed minimum term.

**The Regan Tokes Law.**

{¶35} The Reagan Tokes Law (S.B. 201) was enacted in 2018 and became effective on March 22, 2019. The Reagan Tokes Law, "significantly altered the sentencing structure for many of Ohio's most serious felonies' by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after the effective date." *State v. Polley*, 6th Dist. Ottawa No. OT-19-039, 2020-Ohio-3213, ¶ 5, fn. 1.

{¶36} As with any statute enacted by the General Assembly, the Reagan Tokes Law is entitled to a "strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7. Thus, "if at all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier,* 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991). A party challenging the

constitutionality of a statute bears the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, *citing State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

{¶37} The power to define criminal offenses and prescribe punishment is vested in the legislative branch of government and courts may only impose sentences as provided by statute. *Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). In the case at bar, the legislature has authorized as a sentence for a felony of the first degree,

> (1)(a) For a felony of the first degree committed on or after the effective date of this amendment, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.

R.C. 2929.14(A)(1)(a).

{¶38} The legislature has authorized as a sentence for a felony of the second degree,

> (2)(a) For a felony of the second degree committed on or after the effective date of this amendment, the prison term shall be an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code, except that if the section that criminalizes the conduct constituting the felony specifies a different minimum term or penalty for the offense, the specific language of that section shall control in determining the minimum term or otherwise sentencing the offender but the minimum term or sentence imposed under that specific language shall be considered for purposes of the Revised Code as if it had been imposed under this division.

R.C. 2929.14(A)(2)(a).  Indefinite sentences are not new to Ohio.  In fact, the preSB2 sentence for a felony of the first degree as charged in this case the defendant could have received an indeterminate minimum sentence of five, six, seven, eight, nine or ten years up to a maximum of twenty-five years. *See, State v. Davis,* 9th Dist. Summit No. 13092, 1987 WL 25743(Nov. 25, 1987), citing former R.C. 2929.11. The pre-SB2 sentence for a felony of the second degree was as follows,

> (A) Whoever is convicted of or pleads guilty to a felony other than aggravated murder or murder . . . shall be imprisoned for an indefinite term
>
> (B)(5) For a felony of the second degree, the minimum term shall be two, three, four or five years, and the maximum shall be fifteen years.

*State v. Jenks,* 2nd Dist. Montgomery No. 10264, 1987 WL 20267(Nov. 16, 1987), citing former R.C. 2929.1. What is different from prior law regarding indefinite sentences is that the Regan Tokes Law has created a presumptive release date.

{¶39} The Reagan Tokes Law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first or second degree felony committed on or after March 22, 2019, impose a minimum prison term under that provision and a maximum prison term determined under R.C. 2929.144(B); R.C. 2929.144(C). Further, under the Regan Tokes Law, there is a presumption that the offender "*shall be released* from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B) (emphasis added). A presumptive earned early release date is a date determined under procedures described in R.C. 2967.271(F), which allow the sentencing court to reduce the minimum prison term under certain circumstances. R.C. 2967.271(A)(2). The DRC may rebut the presumption if it determines at a hearing that one or more statutorily numerated factors apply. R.C. 2967.271(C). If DRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the minimum prison term or presumptive earned early release date for a reasonable period of time, determined and specified by DRC that "shall not exceed the offender's maximum prison term." R.C. 2967.271(D)(1).

{¶40} Under the Regan Tokes Law, the judge imposes both a minimum and a maximum sentence. Judicial fact-finding is not required. In Ohio, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or

more than the minimum sentences." *State v. Kalish*, 120 Ohio St.3d 23, 2008–Ohio–4912, 896 N.E.2d 124 paragraphs 1 and 11. The Department of Rehabilitation and Correction ("DRC") is not permitted to extend a sentence imposed by the trial court beyond the maximum sentence imposed by the trial court.

### *An incarcerated individual does not have a constitutional right to parole or release before serving his entire sentence.*

{¶41} An inmate has no constitutional right to parole release before the expiration of his sentence. *Greenholtz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Ohio Adult Parole Authority has "wide-ranging discretion in parole matters." *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28. *See also, State ex rel. Bailey v. Ohio Parole Board,* 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶9.

{¶42} The Supreme Court has made it clear that a mere unilateral hope or expectation of release on parole is not enough to constitute a protected liberty interest; the prisoner "must, instead, have a legitimate claim of *entitlement* to it." *Greenholtz,* 422 U.S. at 7, 99 S.Ct. at 2104 (*quoting Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)) (emphasis supplied). Moreover, only state law can create this "legitimate claim of entitlement"; the federal constitution protects such claims, but does not create them. "There is no constitutional or inherent right of a convicted person to be conditionally released [i.e., released on parole] before the expiration of a valid sentence." *Greenholtz,* 442 U.S. at 7, 99 S.Ct. at 2104. *Accord, Inmates of Orient Correctional Institute v. Ohio State Parole Board,* 929 F.2d 233, 235(6th Cir 1991).

{¶43} However, if state law entitles an inmate to release on parole that entitlement is a liberty interest that is not to be taken away without due process.  *See Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), where the Supreme Court so held in the context of a statute providing that the Nebraska parole board "shall" release parole-eligible inmates unless one of several factors specified in the statute should be found to exist.

{¶44}  As relevant here, R.C. 2967.271(B) states:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that *the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.*  (Emphasis added).

{¶45}  Also relevant is R.C. 2967.271(C), which states:

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division.  Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.  The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

{¶46} The legislature by choosing the language "there shall be a presumption that the person *shall be released*" and "Unless the department rebuts the presumption, the offender *shall be released*," within the Regan Tokes Law has arguably created enforceable liberty interests in parole. *Board of Pardons v. Allen*, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). *See, also, Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority,* 929 F.2d 233, 236-237(6th Cir. 1991("Although the power

to deny parole is purely discretionary as far as Ohio's statutes are concerned, the state's administrative regulations must also be considered. If Ohio's regulations created an explicit presumption of entitlement to release on parole—as Tennessee's regulations formerly did, *see Mayes v. Trammell*, 751 F.2d 175, 178 (6th Cir. 1984)—or if the Ohio regulations otherwise used " 'mandatory language' in connection with 'specific substantive predicates' " for release on parole, *see Beard v. Livesay*, 798 F.2d 874, 877 (6th Cir.1986) (quoting *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983)), the regulations alone could create a protected liberty interest."). *Cf. State, ex rel. Bailey v. Ohio Parole Board,* 152 Ohio St.3d 426, 2017-Ohio-9202, 97 N.E.3d 433, ¶ 10 ("The Revised Code creates an inherent expectation 'that a criminal offender will receive meaningful consideration for parole.'" (*Citing Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 27).

{¶47} "As for the Due Process Clause, standard analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)." *Swarthout v. Cooke,* 562 U.S. 216, 219-220, 131 S.Ct. 859, 178 L.Ed.2d 732(2011). Having created an enforceable liberty interest in parole by the express terms of the Regan Tokes Act, the question now becomes what process is due in the prison setting.

### *Due Process in the prison setting.*

{¶48} When a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and courts will review the application of those

constitutionally required procedures. *Swarthout v. Cooke,* 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732(2011).

**{¶49}** In the context of parole, the United States Supreme Court has held that the procedures required are minimal. In *Greenholtz*, the Court found that a prisoner subject to a parole statute received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. Id. at 16, 99 S.Ct. 2100. "The Constitution," we held, "does not require more." *Swarthout v. Cooke,* 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732(2011).

**{¶50}** In *Woods v. Telb*, the Ohio Supreme Court made the following observation concerning Ohio law,

Under the [pre-SB2] system of parole, a sentencing judge, imposing an indefinite sentence with the possibility of parole, had limited power or authority to control the minimum time to be served before the offender's release on parole; the judge could control the maximum length of the prison sentence, but the judge had no power over when parole might be granted in between those parameters. The judge had no power to control the conditions of parole or the length of the parole supervision.

\*\*\*

But, we observe that for as long as parole has existed in Ohio, the executive branch (the APA[1] and its predecessors) has had absolute discretion over that portion of an offender's sentence. *See State ex rel. Atty. Gen. v. Peters* (1885), 43 Ohio St. 629, 4 N.E. 81

---

[1] Adult Parole Authority

. * * *

*Woods v. Telb,* 89 Ohio St.3d at 511-512, 733 N.E.2d 1103.

{¶51}  Although entitled to the protection under the Due Process Clause, "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolfe v. McDonnell,* 416 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935(1974) (citations omitted).  In *Wolfe,* the United States Supreme Court observed,

> In striking the balance that the Due Process Clause demands, however, we think the major consideration militating against adopting the full range of procedures suggested by *Morrissey* [*v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484(1972)] for alleged parole violators is the very different stake the State has in the structure and content of the prison disciplinary hearing.  That the revocation of parole be justified and based on an accurate assessment of the facts is a critical matter to the State as well as the parolee; but the procedures by which it is determined whether the conditions of parole have been breached do not themselves threaten other important state interests, parole officers, the police, or witnesses—at least no more so than in the case of the ordinary criminal trial.  Prison disciplinary proceedings, on the other hand, take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.  Some are first offenders, but many are recidivists who have repeatedly employed illegal and often very violent means to attain their ends.  They may have

little regard for the safety of others or their property or for the rules designed to provide an orderly and reasonably safe prison life.  Although there are very many varieties of prisons with different degrees of security, we must realize that in many of them the inmates are closely supervised and their activities controlled around the clock.  Guards and inmates co-exist in direct and intimate contact.  Tension between them is unremitting.  Frustration, resentment, and despair are commonplace.  Relationships among the inmates are varied and complex and perhaps subject to the unwritten code that exhorts inmates not to inform on a fellow prisoner.

416 U.S. 539, 561-562, 94 S.Ct. 2963, 41 L.Ed.2d 935.  Indeed, it has been noted,

"[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *[Procunier v. Martinez,* 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224(1974), *overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 413(1989)].*  As the *Martinez* Court acknowledged, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree."  Id., at 404–405, 94 S.Ct. at 1807.  Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.  Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.  Where a state penal system

is involved, federal courts have, as we indicated in *Martinez*, additional

reason to accord deference to the appropriate prison authorities.  See id.,

at 405, 94 S.Ct. at 1807.

*Turner v. Safley,* 482 U.S. 78, 84-85, 107 S.Ct. 2254, 96 L.Ed.2d 64(1987).  "Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." *Wolfe v. McDonnell,* 418 U.S. at 560, 94 S.Ct. 2963, 41 L.Ed.2d 935.

{¶52}  The Courts have found therefore, that the following procedures should be accorded to prisoners facing prison disciplinary proceedings: 1). a prisoner is entitled to a review unaffected by "arbitrary" decision-making.  *Wolfe,* 418 U.S. at 557-558; (*See,* Ohio Adm. Code 5120-9-08).  2). Advance written notice of the claimed violation.  *Wolfe,* 418 U.S. at 563.  (*See,* Ohio Adm. Code 5120:1-8-12).  3). A written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken.  *Wolfe,* 418 U.S. at 563.  (*See,* Ohio Adm. Code 5120-9-08(M); Ohio Adm. Code 5120:1-11(G)(1)).  4). Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence.  *Wolfe,* 418 U.S. at 566.  (*See,* Ohio Adm. Code 5120-9-08(E) (3); Ohio Adm. Code 5120-9-08(F)).  5). Where an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that

is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff. *Wolfe,* 418 U.S. at 570. (*See,* Ohio Adm. Code 5120-9-07(H)(1)).

{¶53} In the case at bar, in order to rebut the presumptive release date, the DRC must conduct a hearing and determine whether any of the following factors are applicable:

(1) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated [and] [t]he offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2) and (3).

{¶87} Although the power to deny parole is purely discretionary as far as Ohio's statutes are concerned, the state's administrative regulations must also be considered." *Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority,* 929 F.2d 233, 236-237(6th Cir. 1991). The DRC is required to provide notice of the hearing. R.C. 2967.271(E). Ohio Adm. Code 5120-9-06 sets forth the inmate rules of conduct. Ohio Adm. Code 5120-9-08 sets forth the disciplinary procedures for violations of inmate rules of conduct before the rules infraction board. Ohio Adm. Code 5120-9-10 sets forth the procedures for when and under what circumstances an inmate may be placed in and/or transferred to a restrictive housing assignment. Ohio Adm. Code 5120:1-1-11 sets forth the procedure of release consideration hearings. Thus, an inmate is given notice in advance of the behavior that can contribute or result in an extended sentence and under what circumstance the inmate can be placed or transferred to a restrictive housing assignment.

{¶88} Each procedure employed provides at the least for notice and the opportunity to be heard. Under the Regan Tokes Law, an inmate is afforded notice and a hearing by R.C. 2967.271(E), which states:

> The [DRC] shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12 and Chapter 2930 of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate.

*See, State v. Guyton,* 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 11; *State v. Leet,* 2nd Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶11 ("Reagan Tokes does not facially violate a defendant's right to procedural due process.")

### *Separation of Powers is not violated.*

{¶89}   Nor can it be argued that because the DRC can increase a sentence beyond the minimum given by the trial judge, the Regan Tokes Law usurps judicial authority.  As already noted, the DRC may not increase the sentence beyond the maximum sentence imposed by the trial court.  The Ohio Supreme Court has made it clear that, when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence. *See  Hernandez v. Kelly,* 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20, *citing  State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19.  Such is the case under the scheme established by the Reagan Tokes Law.  *State v. Ferguson,* 2nd Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶23.  The statute does not permit the DRC to act "'as judge, prosecutor and jury,' for an action that could be prosecuted as a felony in a court of law."  *Woods v. Telb,* 89 Ohio St.3d at 512, 733 N.E.2d 1103, *quoting State, ex rel. Bray v. Russell,* 89 Ohio St.3d 132, 135, 729 N.E.2d 359(2000).  It should be noted that Bray was charged with and convicted of drug possession and sentenced to an eight-month prison term.  While in prison, Bray allegedly assaulted a prison guard in violation of R.C. 2903.13.  Pursuant to R.C. 2967.11(B), the Ohio Parole Board imposed a ninety-day bad-time penalty to be added to Bray's original term.  Bray's original sentence of eight months for drug possession expired on June 5, 1998, at which time his additional ninety-day penalty began.  On June 12, 1998, Bray filed a writ of habeas corpus

in the Court of Appeals for Warren County, claiming that Warden Harry Russell was unlawfully restraining him. 89 Ohio St.3d 132, 133, 729 N.E.2d 359. Thus, the Parole Board extended Brey's sentence beyond the maximum sentence the trial court had impose. Buckner points to nothing within the Regan Tokes Law that would permit the DRC to extend his sentence beyond the eight year set by the trial judge. (T. at 29).

{¶90} Further, as we have noted, under the Regan Tokes Law an inmate is afford the due process rights accorded to one who is incarcerated before any increase can occur. Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. For as long as parole has existed in Ohio, the executive branch (the APA and its predecessors) has had absolute discretion over when parole will be granted. *Woods v. Telb,* 89 Ohio St.3d at 511-512, 733 N.E.2d 1103.

**Conclusion.**

{¶91} The Reagan Tokes Law does not allow the DRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court. The Law does not give the DRC unfettered discretion to require an offender to serve more than the minimum term. The statutes afford an offender notice and an opportunity to be heard before a more than the minimum may be required. The Regan Tokes Law provides a prisoner with the appropriate due process rights accorded to prisoners.

{¶92} Although entitled to the protection under the Due Process Clause, prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. For as long as parole has existed in Ohio, the executive branch (the APA and its predecessors) has had absolute

discretion over when parole will be granted.  *Woods v. Telb,* 89 Ohio St.3d at 511-512,

733 N.E.2d 1103.

{¶93}  Accordingly, I would overrule the Appellant's First Assignment of Error and

find the Regan Tokes Law is constitutional.

II.

{¶94}  In his Second Assignment of Error, Appellant maintains that he was denied

effective assistance of trail counsel because trial counsel failed to challenge the

constitutionality of the Regan Tokes law in the trial court.

{¶95}   To prevail on a Sixth Amendment claim alleging ineffective assistance of

counsel, a defendant must show that his counsel's performance was deficient and that

his counsel's deficient performance prejudiced him.  *Strickland v. Washington,* 466 U.S.

668, 694 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To show deficiency, a defendant must

show that "counsel's representation fell below an objective standard of reasonableness."

Id., at 688, 104 S.Ct. 2052.  And to establish prejudice, a defendant must show "that there

is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  Id., at 694, 104 S.Ct. 2052.  *See, also, Andrus,*

*v. Texas,* __U.S.__, 140 S.Ct. 1875, 1881, 207 L.Ed.2d 335(June 15, 2020).

{¶96}  Because the Regan Tokes Law is constitutional, there is no reasonable

probability that, but for counsel's failure to challenge the constitutionality of the Regan

Tokes Law the result of the proceeding would have been different.

{¶97}  I would therefore overrule Appellant's Second Assignment of Error.

III.

{¶98} In his Third Assignment of Error, Appellant argues that that the trial court failed to comply with R.C. 2929.19(B)(2)(c) because the court did not provide the requisite notices at his sentencing hearing and that the sentence is contrary to law.

{¶99} The language of R.C. 2929.19(B)(2)(c) became effective March 22, 2019 and to date its application has not received close scrutiny.  The relevant portions of this statute provide that:

> (B)(1) *At the sentencing hearing*, the court, *before imposing sentence*, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the presentence investigation report made pursuant to section 2951.03 of the Revised Code or Criminal Rule 32.2, and any victim impact statement made pursuant to section 2947.051 of the Revised Code.
>
> (2) Subject to division (B)(3) of this section, if the sentencing court determines *at the sentencing hearing* that a prison term is necessary or required, the court shall do all of the following:

(Emphasis added.)

{¶100} Subsection (B)(2)(c) sets out the notifications that are to be provided in accordance with the directive of Subsections (B)(1) and (2) which mandates that the court notify the offender at the sentencing hearing:

> (c) If the prison term is a non-life felony indefinite prison term, notify the offender of all of the following:
>
> (i) That it is rebuttably presumed that the offender will be released from service of the sentence on the expiration of the minimum prison term

imposed as part of the sentence or on the offender's presumptive earned early release date, as defined in section 2967.271 of the Revised Code, whichever is earlier;

(ii) That the department of rehabilitation and correction may rebut the presumption described in division (B)(2)(c)(i) of this section if, at a hearing held under section 2967.271 of the Revised Code, the department makes specified determinations regarding the offender's conduct while confined, the offender's rehabilitation, the offender's threat to society, the offender's restrictive housing, if any, while confined, and the offender's security classification;

(iii) That if, as described in division (B)(2)(c)(ii) of this section, the department at the hearing makes the specified determinations and rebuts the presumption, the department may maintain the offender's incarceration after the expiration of that minimum term or after that presumptive earned early release date for the length of time the department determines to be reasonable, subject to the limitation specified in section 2967.271 of the Revised Code;

(iv) That the department may make the specified determinations and maintain the offender's incarceration under the provisions described in divisions (B)(2)(c)(i) and (ii) of this section more than one time, subject to the limitation specified in section 2967.271 of the Revised Code;

(v) That if the offender has not been released prior to the expiration of the offender's maximum prison term imposed as part of the sentence, the offender must be released upon the expiration of that term.

(d) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced, other than to a sentence of life imprisonment, for a felony of the first degree or second degree, for a felony sex offense, or for a felony of the third degree that is an offense of violence and is not a felony sex offense. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a non-life felony indefinite prison term and including a term imposed for any offense of a type described in this division that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. If a court imposes a sentence including a prison term of a type described in division (B)(2)(d) of this section on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(d) of this section that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the mandatory period of supervision that is required for the offender under division (B) of section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(d) of

this section and failed to notify the offender pursuant to division (B)(2)(d) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

(e) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree that is not subject to division (B)(2)(d) of this section. This division applies with respect to all prison terms imposed for an offense of a type described in this division, including a term imposed for any such offense that is a risk reduction sentence, as defined in section 2967.28 of the Revised Code. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term of a type described in division (B)(2)(e) of this section and failed to notify the offender pursuant to division (B)(2)(e) of this section regarding post-release control or to include in the judgment of conviction entered on the journal or in the sentence a statement regarding post-release control.

(f) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(2)(d) or (e) of this section, and if the offender violates that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code, the parole board may impose a prison term, as part of the sentence, of up to one-half of the definite prison term originally

imposed upon the offender as the offender's stated prison term or up to one-half of the minimum prison term originally imposed upon the offender as part of the offender's stated non-life felony indefinite prison term. If a court imposes a sentence including a prison term on or after July 11, 2006, the failure of a court to notify the offender pursuant to division (B)(2)(f) of this section that the parole board may impose a prison term as described in division (B)(2)(f) of this section for a violation of that supervision or a condition of post-release control imposed under division (B) of section 2967.131 of the Revised Code or to include in the judgment of conviction entered on the journal a statement to that effect does not negate, limit, or otherwise affect the authority of the parole board to so impose a prison term for a violation of that nature if, pursuant to division (D)(1) of section 2967.28 of the Revised Code, the parole board notifies the offender prior to the offender's release of the board's authority to so impose a prison term. Section 2929.191 of the Revised Code applies if, prior to July 11, 2006, a court imposed a sentence including a prison term and failed to notify the offender pursuant to division (B)(2)(f) of this section regarding the possibility of the parole board imposing a prison term for a violation of supervision or a condition of post-release control

(g)(i)1 Determine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced

and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term or, if the offense is an offense for which a non-life felony indefinite prison term is imposed under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code, the minimum and maximum prison terms imposed on the offender as part of that non-life felony indefinite prison term, under section 2967.191 of the Revised Code. The court's calculation shall not include the number of days, if any, that the offender served in the custody of the department of rehabilitation and correction arising out of any prior offense for which the prisoner was convicted and sentenced.

{¶101} Thus, the trial court must provide the information described in R.C. 2929.19(B)(2)(c) to a defendant at the sentencing hearing to fulfill the requirements of the statute.

{¶102} In this case, the court gave no advisement of any of the requirements set forth in R.C. 2929.19(B) *at the sentencing hearing*. The October 22, 2019 hearing was a *change of plea hearing*. The trial court clearly was not prepared to sentence Appellant; rather, the court deferred sentencing and ordered the preparation of a pre-sentence investigation report before the trial court could decide Appellant's sentence. The *sentencing hearing* occurred nearly one month later on November 15, 2019. R.C. 2929.19(B)(1) and (B)(2) explicitly mandate that "if the sentencing court determines *at the sentencing hearing* that a prison term is necessary or required, the court *shall*" give the mandated advisements *at the sentencing hearing.*

{¶103} I would find that the sentence is contrary to law. I would therefore sustain Appellant's Third Assignment of Error and would reverse and remand the decision of the Licking County Court of Common Pleas for resentencing.