[Cite as *State v. Doughty*, 2021-Ohio-651.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JAMES R. DOUGHTY | : | Case No. 20-CA-00001 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common
                                Pleas, Case No. 19-CR0043


JUDGMENT:                       Affirmed, Matter Remanded for
                                Nunc Pro Tunc Sentencing Entry


DATE OF JUDGMENT:               March 5, 2021


APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

JOSEPH A.  FLAUTT                           ADDISON M. SPRIGGS
111 North High Street                       250 East Broad Street
P.O. Box 569                                Suite 1400
New Lexington, OH  43764-0569               Columbus, OH  43215

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant James Robert Doughty appeals the December 24, 2019 judgment of conviction and sentence of the Perry County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

Facts and Procedural History

{¶ 2}   On June 25, 2019, the Perry County Grand Jury returned an indictment charging appellant with the following:

{¶ 3}   Three counts of domestic violence pursuant to R.C. 2919.25(A), felonies of the third degree. These counts alleged violations on three different days.

{¶ 4}   Two counts of felonious assault pursuant to R.C. 2903.11(A)(1), felonies of the second degree. Both counts were alleged to have occurred on the same day. One count alleged appellant caused serious physical harm and one count alleged appellant caused or attempted to cause serious physical harm by means of a deadly weapon.

{¶ 5}   One count of kidnapping pursuant to R.C 2905.01(A)(3), a felony of the first degree.

{¶ 6}   One count of rape pursuant to 2907.02(A)(2), a felony of the first degree.

{¶ 7}    Four counts of violating a protection order pursuant to R.C. 2919.27(A)(2), felonies of the third degree. These counts alleged violations on four different dates.

{¶ 8}   One count of aggravated menacing pursuant to R.C. 2903.21(A), a misdemeanor of the first degree.

{¶ 9}   All charges pertained to appellant's girlfriend G.W.

{¶ 10} Appellant pled not guilty to the charges and elected to proceed to a jury trial which began on December 11, 2019. The facts relevant to this matter follow.

{¶ 11} Appellant and G.W. began living together in in 2016. The two lived in a camper situated within feet of appellant's father's residence. In January of 2019, following an incident of domestic violence, G.W. moved out and obtained a protection order against appellant. A week later, she moved back in with appellant.  Appellant was aware of the protection order. Transcript of trial (T.) 199, 204, 208.

{¶ 12} The relationship between the two remained violent. In April 2019, the Friday before Easter, appellant argued with G.W. Because appellant's young children were present for the weekend, he told G.W. they needed to talk outside the camper. Once outside, appellant punched G.W. in the chest causing her to spin around, fall face down into the gravel drive, and briefly lose consciousness. When G.W. attempted to get up, appellant punched her in the chest a second time and told her he hoped she died of a heart attack. He then began choking G.W. and banging her head on the ground. Eventually it began to rain. The two went back into the camper and appellant acted as if nothing happened. T. 212-216.

{¶ 13} G.W. went to the bedroom and appellant stayed in the living room and kitchen area with his children. G.W. was in pain, but did not leave to seek help that day or in the following days as appellant told her if she did leave, he would shoot her with his shotgun. T. 218.

{¶ 14} Later that night, appellant came into the bedroom and ordered G.W. onto the floor. He then struck her repeatedly in the abdomen with the butt of the shotgun.

{¶ 15} The following Monday, appellant accused G.W. of cheating on him. In his anger, appellant hit G.W. in the face with the butt of his shotgun. G.W. believed she suffered a concussion as a result as she experienced dizziness, nausea, and blurred vision. T. 222-223.

{¶ 16} Two or three days later, G.W. described appellant as "on one of his rages." While she was standing in front of the television, appellant grabbed a trash bag and put it over G.W.'s head, attempting to suffocate her. She managed to get herself free of the bag, but lost her balance and fell down in the process. Appellant ordered her to get up, remove her pants, and lay down on the floor. G.W. complied. Appellant inserted the muzzle of the shotgun into G.W.'s vagina, pulled it out and then kicked G.W. in the crotch. T. 224-225.

{¶ 17} Also during this period of abuse, appellant stabbed G.W. in the leg with a fork on one occasion and with a knife on another, burned her, and hit her legs with the gun. T. 231.

{¶ 18} Appellant eventually told G.W. he would let her go if she would arrange for him to get together with her 17 year-old daughter. G.W. convinced appellant she could make this happen if he took her to her daughter's home. T. 229.

{¶ 19} Appellant dropped G.W. off at her daughter's apartment which she shared with friends. Those friends testified G.W. was very upset and emotional when she arrived. Appellant had advised G.W. not to be long. When she took too long, he angrily pounded on the door ordering her to come out and threatening the occupants if they failed to send G.W's daughter out. This went on for approximately an hour with appellant leaving and

returning. Eventually one of the occupants called the sheriff's department. Deputy Cody Palmer responded and G.W. was transported to a hospital. T. 151-152, 156.

{¶ 20} The jury viewed photographs of G.W.'s injuries which included a black eye, bruising to her face, head, chest, back and legs, and two puncture wounds, one which appeared to be caused by a fork. The attending doctor also testified G.W. sustained multiple rib fractures.

{¶ 21} After hearing the evidence and deliberating, the jury acquitted appellant of rape and kidnapping, but convicted him of the remaining charges.

{¶ 22} A sentencing hearing was conducted on December 19, 2019, following a re-sentence investigation. The trial court sentenced appellant as follows:

{¶ 23} For each count of violating a protection order, felonies of the third degree, 30 months to be served concurrently.

{¶ 24} For violating a protection order and aggravated menacing, misdemeanors of the first degree, 6 months local incarceration on each count, concurrent with each other and with the sentences for the third-degree felony violating a protection order.

{¶ 25} For two counts of second degree felonious assault, 7 years for each count, consecutive to each other, but concurrent to the previously imposed sentences.

{¶ 26} For each count of third degree felony domestic violence the court imposed 24 months to run concurrently with each other and with the previously imposed sentences for an aggregate minimum prison term of 14 years, and pursuant to R.C. 2967.271, could face incarceration up to 17 and one half years. Transcript of Sentencing (T.S.) 7-10.

{¶ 27} The judgment entry, however reads:

It is further ordered that the periods of imprisonment for the two (2) counts of felonious assault be served consecutive with each other *and all other terms of imprisonment*. The defendant, is therefore sentenced to a term of a minimum of fourteen (14) years and a maximum of seventeen and a half (17.5) years.

{¶ 28} Sentencing judgment entry, December 24, 2019, emphasis added.

{¶ 29} Appellant filed an appeal. He raises two assignments of error for our consideration as follow:

I

{¶ 30} "THE TRIAL COURT FAILED TO MERGE ALLIED OFFENSES OF SIMILAR IMPORT AND IMPOSED A LONGER PRISON TERM THAN AUTHORIZED BY LAW."

{¶ 31} In his first assignment of error, appellant argues the trial court erred in failing to merge his convictions for domestic violence and felonious assault as allied offense of similar import. We disagree.

{¶ 32} R.C. 2941.25 governs multiple counts and states the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more

offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 33} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held the following:

1. In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must evaluate three separate factors—the conduct, the animus, and the import.

2. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

3. Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

{¶ 34} The *Ruff* court explained at ¶ 26:

At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

{¶ 35} First, appellant argues his two convictions for domestic violence and three felonious assault should have merged for sentencing. We note, however, appellant was convicted of three counts of domestic violence and two counts of felonious assault.

{¶ 36} Next, appellant did not seek merger at the sentencing hearing. We therefore review his argument for plain error. In *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E3d, 860, ¶ 21–25, citing *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15–16. "Crim.R. 52(B) affords appellate courts discretion to

correct '[p]lain errors or defects affecting substantial rights' notwithstanding the accused's failure to meet his obligation to bring those errors to the attention of the trial court." *Rogers* at ¶ 22. The defendant "bears the burden of proof to demonstrate plain error on the record." *Id.*, citing *Quarterman* at ¶ 16. To demonstrate plain error, the defendant must show " 'an error, i.e., a deviation from a legal rule' that constitutes 'an "obvious" defect in the trial proceedings' " and that the error affected a substantial right, i.e., the defendant must demonstrate a "reasonable probability" that the error resulted in prejudice, affecting the outcome of the trial. *Rogers* at ¶ 22, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "We recognize plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Lyndhurst v. Smith*, 8th Dist. Cuyahoga No. 101019, 2015-Ohio-2512, 2015 WL 3899130, ¶ 32, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110, 559 N.E.2d 710 (1990).

{¶ 37} The indictment in this matter charged appellant with three counts of domestic violence occurring on or about three different days; April 18, 2019, April 20, 2019, and April 24, 2019. Both counts of felonious assault were alleged to have taken place on or about April 20, 2019. The first count alleged appellant caused serious physical harm and the other alleged he caused or attempted to cause physical harm to another by means of a deadly weapon. Indictment, January 25, 2019.

{¶ 38} G.W. testified to eight incidents occurring around Easter, 2019. On the Friday before Easter, appellant badgered G.W., accusing her of cheating on him, and slapped her in the face. T. 212-213.

{¶ 39} On Saturday morning, appellant told G.W. they needed to go outside to talk away from his young children who were visiting for the weekend. Once outside, appellant

punched G.W. in the chest, sending her face down onto the ground and causing her to lose consciousness for a few moments. When she came to, appellant was standing over her screaming he hoped she died of a heart attack. When she tried to get up, appellant punched her in the chest again, then came at her with a tire iron. G.W. laid on the ground and covered her head. Appellant then choked her and banged her head into the ground. Appellant then went back into the camper, came back out with a knife, cornered G.W. and threatened to slice her throat. It started raining and they returned to the camper. Appellant acted as if nothing had happened.  G.W. went to the bedroom and appellant stayed in the kitchen area with his children. T. 214-217.

{¶ 40} Later that evening, appellant came into the bedroom with his shotgun and ordered G.W. onto the floor. G.W complied. Appellant then proceeded to strike G.W. in the abdomen repeatedly with the butt end of the shotgun. Appellant then left the bedroom and came back with a knife and bleach. He threatened to cut her fingers off and to blind her with the bleach. When appellant noticed G.W.'s thumb had been cut and she was bleeding he stopped and told her to clean up the mess. T. 219-220.

{¶ 41} G.W. testified appellant did not assault her or terrorize her on Easter Sunday. T. 221.

{¶ 42} The following day, however, appellant again accused G.W. of cheating on him, hit her in the head with the butt end of the shotgun and knocking her over and causing her face to immediately swell. G.W. believed she suffered a concussion from this incident as she felt nauseous and experienced blurred vision. T. 221-222.

{¶ 43} Two or three days later, G.W. testified appellant "in one of his rages" charged her, pulled a trash bag over her head and attempted to suffocate her. As she

clawed her way out of the trash bag, she lost her balance and fell. Appellant ordered her to get up remove her pants and then lie down. G.W. complied. Appellant then asked her if he should burn her vagina or superglue it shut. He decided instead to insert the muzzle of the shotgun into her vagina, remove it, and then kick her in the crotch. He then once again acted as if nothing had happened. T. 224-225.

{¶ 44} G.W. further testified in the days following, on one occasion appellant hit her on top of her head so hard she nearly blacked out, on another he stabbed her in the leg with a fork, and in yet another, he threw a knife at her, lodging it into her leg.

{¶ 45} Based on this testimony, we find no plain error. Appellant's conduct constitutes separate offenses against a single victim and the resulting harm from each offense is separate and identifiable from the harm of the other offenses. Appellant assaulted G.W. on at least five separate days, some days on more than one occasion, He used deadly weapons -- a gun and a knife -- on at least three separate occasions, and caused separate and identifiable harm on each occasion. We therefore find the trial court did not err in failing to merge any of appellant's convictions for felonious assault or domestic violence.

{¶ 46} As noted in our statement of facts, however, the judgment entry in this matter does not reflect the sentence imposed on the record. On the record, the trial court ordered appellant to serve the sentences for two felonious assault convictions consecutively. It ordered all other sentences be served concurrently with one another and concurrently with the sentences for felonious assault. The judgment entry does not reflect the concurrent sentences.

{¶ 47} Appellant's first assignment of error is overruled, however, we remand the matter for a nunc pro tunc judgment entry to reflect the sentence imposed on the record.

II

{¶ 48} "BECAUSE THE REAGAN TOKES ACT VIOLATES THE OHIO AND UNITED STATES CONSTITUTIONS, MR. DOUGHTY'S SENTENCE IS CONTRARY TO LAW. R.C.2953.08(G)(2); SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITES STATES CONSTITUTION; ARTICLES I, II, AND III OF THE UNITED STATES CONSTITUTION; ARTICLE I, SECTIONS 5, 10 AND 16 OF THE OHIO CONSTITUTION."

{¶ 49} Appellant's final assignment of error challenges the constitutionality of the Regan Tokes Act which codified hybrid indefinite prison terms for first and second degree felonies. Appellant challenges the presumptive release feature of the act, R.C. 2967.271, arguing it violates his constitutional rights to trial by jury and due process of law, and further violates the constitutional requirement of separation of powers and equal protection.

{¶ 50} R.C. 2967.271 provides in relevant part:

> (B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration

of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's

incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

{¶ 51} Appellant argues these portions of R.C 2967.271 permitting the Department of Rehabilitation and Corrections (DRC) to administratively extend his prison term beyond his presumptive minimum prison term violate the United States and Ohio Constitutions. However, as the state points out, appellant has not yet been subject to the application of these provisions, as he has not yet served his minimum term, and therefore has not been denied release at the expiration of his minimum term of incarceration.

{¶ 52} We addressed the concept of ripeness for review in regard to the Regan Tokes Act in *State v. Downard*, 5th Dist. Muskingum, CT2019, 2020-Ohio-4227:

The Ohio Supreme Court discussed the concept of ripeness for review in *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 1998-Ohio-366, 694 N.E.2d 459:

Ripeness "is peculiarly a question of timing." Regional Rail Reorganization Act Cases (1974), 419 U.S. 102, 140, 95 S.Ct. 335, 357, 42 L.Ed.2d 320, 351. The ripeness doctrine is motivated in part

by the desire "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies * * *." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148, 87 S.Ct. 1507, 1515,"18 L.Ed.2d 681, 691. As one writer has observed:

The basic principle of ripeness may be derived from the conclusion that 'judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote.' * * * [T]he prerequisite of ripeness is a limitation on jurisdiction that is nevertheless basically optimistic as regards the prospects of a day in court: the time for judicial relief is simply not yet arrived, even though the alleged action of the defendant foretells legal injury to the plaintiff. Comment, Mootness and Ripeness: The Postman Always Rings Twice (1965), 65 Colum. L.Rev. 867, 876. Id. at 89, 694 N.E.2d at 460.

In *State v. McCann*, 8th Dist. Cuyahoga No. 85657, 2006-Ohio-171, the defendant argued because the Parole Board, pursuant to R.C. 2967.28, could extend his sentence by up to an additional five years for violation of post-release control, the statute was unconstitutional. The Eighth District Court of Appeals concluded because McCann was not currently the subject of such action by the Parole Board, the issue was not yet ripe for review. Id. at ¶6.

Likewise, in the instant case, while R.C. 2967.271 allows the DRC to rebut the presumption Appellant will be released after serving his nine year minimum sentence and potentially continue his incarceration to a term not exceeding thirteen years, Appellant has not yet been subject to such action by the DRC, and thus the constitutional issue is not yet ripe for our review.

{¶ 53} *Downard*, at ¶8-11. See also, *State v. Buckner*, 5th Dist. Muskingum Nos. CT2020-0023 & CT2020-0024, 2020-Ohio-7017; *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501; *State v. Cochran*, 5th Dist. Licking No. 2019 CA 00122, 2020-Ohio-5329; *State v. Clark*, 5th Dist. Licking No. 2020 CA 00017, 2020-Ohio-5013; *State v. Manion*, 5th Dist. Tuscarawas No. 2020 AP 03 0009, 2020-Ohio-4230; *State v. Kibler*, 5th Dist. Muskingum No. CT2020-0026, 2020-Ohio-4631.

{¶ 54} Appellant does not dispute he had not yet been subject to the provisions of R.C. 2967.271. We therefore find here as we did in *Downard*, appellant's constitutional challenges and his trial counsel's failure to raise the same are not yet ripe for review.

{¶ 55} The second assignment of error is overruled.

{¶ 56} The judgment of conviction and sentence of the Perry County Court of Common Pleas is affirmed, matter remanded for nunc pro tunc sentencing judgment entry.

By Wise, Earle, J.

Baldwin, P.J. and

Delaney, J. concur.

EEW/rw